UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SANTOS RODRIGUEZ, JR., | ) | 1:09-CV-01546 LJO JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| MATHEW CATE, | ) | |
| | ) | |
| Respondent. | ) | THIRTY (30) DAY DEADLINE TO FILE |
| | ) | OBJECTIONS |

Santos Rodriguez, Jr., ("Petitioner") is a California prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a February 16, 2005, jury verdict finding Petitioner guilty of attempted voluntary manslaughter (Cal. Penal Code §§ 192(a), 664) and wilful cruelty to a child (Cal. Penal Code § 273a(a)).  During a separate proceeding, Petitioner was found to have two prior conviction within the meaning of California Penal Code sections 667(b)-(i).  On March 23, 2005, the trial court sentenced Petitioner to an aggregate term of thirty-five years-to-life in prison.

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District, which issued a reasoned opinion on August 3, 2006.  (*See* Resp't Answer Ex. A.)  The appellate court affirmed Petitioner's conviction but credited Petitioner for his presentence custody.  Petitioner filed a petition for review with the California Supreme Court, which was denied on October 11, 2006. (Pet'r's Mem. P. & A. at 3.)

1    On October 24, 2006, Petitioner moved the California Court of Appeal to recall the remittitur
2 and reinstate Petitioner's appeal. (Id.)  The California Court of Appeal granted the motion.  In
3 September 2007, the state appellate court struck one of Petitioner's prior conviction allegations for
4 insufficient evidence and remanded the matter back to the trial court for resentencing.  (Resp't
5 Answer Ex. B.)

6    Petitioner was resentenced by the Kern County Superior Court on February 25, 2008.  The
7 Superior Court imposed a determinate prison term of sixteen years.

8    Thereafter, Petitioner unsuccessfully filed petitions for writ of habeas corpus with Kern
9 County Superior Court, the California Court of Appeal, and the California Supreme Court.

10    On September 1, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

11    On February 17, 2010, Respondent filed an answer to the petition.

## **FACTUAL BACKGROUND**[1]

The California Court of Appeal summarized the factual background of the case, stating:

> On October 21, 2004, (October 21), [Angelina] Ramirez was living in an apartment in Bakersfield with Ruben E., who was then one year one month old. Ramirez is Ruben's legal guardian. Also living with Ramirez at the time was appellant.
>
> On the evening of October 21, Ramirez was lying on her bed with Ruben when appellant entered the room, leaned over Ramirez, supporting himself with his hands, which he rested on the bed outside Ramirez's shoulders, and stated that he could not trust her. As Ramirez and appellant stared at each other, appellant "adjusted his body weight," and "put his hand over the baby's neck," keeping it there for "[a] few seconds."
>
> The previous night, appellant had asked Ramirez if she would watch him having sex with someone else. She did not want to do this but said she would if she could get a babysitter. She knew she would be unable to do so, but she "was just trying to get [appellant] out of the house," and she agreed in order to "buy[ ] some time." After the incident described above, Ramirez told appellant she would get a babysitter and try to find a friend to come back and have sex with him. She had no intention of doing so, but she was afraid of appellant and wanted to get out of the apartment.
>
> Ramirez left Ruben crawling on the floor while she went to gather items to put in his diaper bag. While she was in the bathroom doing this, she saw appellant pick up Ruben and walk out of the room with him. Shortly thereafter she heard the garage door open, so she walked to the door that opened into the garage. After approximately

---

[1] These facts are derived from the California Court of Appeal's opinion issued on August 3, 2006. (*See* Resp't Answer Ex. A.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

five seconds, once her eyes had adjusted to the darkness, she saw appellant bending over some piled up clothing, his right hand pressing down on the pile and Ruben's legs sticking out from the pile. Ramirez ran at appellant; pushed him away and picked up Ruben, who was underneath five or six articles of clothing; and "made sure he was breathing." The baby's face was reddish purple and his lips were turning a little blue.
    Approximately one-half hour later Ramirez left the apartment, she went to the home of a friend and called 911.

(Resp't. Answer Ex. A at 2-3.)

The appellate court also summarized the pertinent trial court proceedings, noting that:

    The trial in the instant case was set for Monday, February 7, 2005.[2] On the morning of that day the prosecutor moved, inter alia, to exclude any evidence related to Child Protective Services (CPS) proceedings against Angelina Ramirez. The court asked defense counsel if he wished to present argument concerning the relevance of such evidence, and counsel responded that he "[did not] have enough discovery" to know whether such evidence was relevant, and moved for discovery for "whatever ... there is regarding that." The prosecutor stated she did not have the evidence in her possession and shortly thereafter the court ordered her to "find out what CPS has, [and] share that with [defense counsel]."
    The prosecutor obtained the CPS records over the lunch hour and made them available to defense counsel. Jury selection began later that afternoon.
    The next morning, Tuesday, February 8, when court reconvened, defense counsel told the court the following. Appellant's "defense is going to be that this was a law enforcement-assisted divorce," and that appellant would testify that Ramirez "had bragged that she had used the police to get rid of guys and lock them up before if they didn't do what she said." Specifically, she had "bragged about having [her husband] locked up because he was fooling around on her and that she had used the police officers to lock up [her husband]." Counsel "didn't have corroboration" for this defense the previous day, but the situation changed when he read the CPS records "towards [the] end" of the previous day, and learned the name of Ramirez's husband, Richard Montiel.
    Counsel further told the court that that morning he "frantically had [his] investigators and secretary running around" and he was able to "pull[ ] up a report" which indicated the following: Ramirez was a dispatcher with the Kern County Sheriff's Department. In that capacity, she dispatched a deputy to a motel room for an "unreported grand theft auto...." In fact, Montiel "was driving the family car at the motel." Moreover, he was on parole; he was at the motel in the company of an 18-year-old woman; he was arrested "for drug use"; and he was currently in prison as a result of the foregoing.
    Defense counsel further told the court he had "no idea" where "Miss Hernandez"[3] was, he had been unable to interview Montiel and he was attempting to subpoena the officers involved. He was unable to "get this done on the fly" while in the process of picking a jury. Therefore, he moved for a mistrial and a continuance.
    The court, noting that the upcoming Friday was a court holiday and that counsel also had the week-end in which to further investigate matters, denied both requests, "without prejudice to be renewed." The court also told defense counsel, "And I might even entertain [a request for] some additional time if you need it. But I need to see how the evidence is going to unfold.... [¶] It's incumbent on us to get the

---

[2] All further references to dates of events are to dates in 2005.

[3] "Miss Hernandez" was apparently the woman with whom Montiel was found at the motel.

panel."

Thereafter, the prosecutor argued that although "there might be some relevancy" to evidence of matters outlined by defense counsel, "it's still hearsay," and allowing defense counsel "to start cross-examination of [Ramirez] when no investigation into these areas has been done" would be "highly prejudicial...." The court responded, "Well, we can cure that with a [Evidence Code section] 402 hearing.[4] We could do that tomorrow at 8:30."

The next morning, Wednesday, February 9, defense counsel renewed his motion for a continuance. He told the court he had been "unable to find anybody to get anything in motion to talk to the various witnesses ... who have come to light recently," and he requested "that we pick a jury and then [the court] give me a couple of days to try to track down these witnesses and make a prison visit to wherever Mr. Montiel is, if I can arrange it on short notice ... so that I can feel a modicum of preparation as I go into my case."

There followed a brief discussion in which the prosecutor stated she had Ramirez "available ... for a 402 hearing." After the court turned to a discussion of jury challenges, defense counsel stated, "I don't know if the Court has ignored my request or ruled upon it, but I am making another request to continue the start of evidence before the jury [until] I have more time to be prepared, and I'm ... asking for Monday." The court responded, "... I want to see these in limine motions because ... I want to hear what Miss Ramirez is going to say.... [¶][I]t's very difficult to rule on this matter in a vacuum until I hear some evidence," "[o]r at least proffered evidence by way of a 402."

The prosecutor then stated that making an opening statement would be difficult unless the court first ruled on her in limine motion to admit evidence of statements made by appellant to police. The court responded, "I'd like to get to that first and then I'd like to see what Miss Ramirez is going to say so that I can kind of get the parameters, the big picture, and then determine certainly if Mr. Lukehart [defense counsel] needs to wait until Monday before we have opening statements or evidence." A short time later the court stated, "[t]here's a motion from the defense to continue presentation of testimony until Monday. I want to hear what the 402 hearings are going to bring out before I make that decision."

Thereafter, the court conducted a hearing on the admission of evidence of appellant's statements. At the conclusion of the hearing the court turned to what it thought was defense counsel's request for a section 402 hearing. Defense counsel, however, stated the prosecution had requested such a hearing, and that his (defense counsel's) motion was for "time." The prosecutor, noting "There's a misunderstanding here," stated that she had requested "the 402 with regards to Angie Ramirez." She explained that she wanted the hearing in order to address the issue of "the impeachment for the things that were contained in the [CPS] report." The court stated such a hearing would impermissibly force defense counsel to reveal his trial strategy. Defense counsel concurred stating, "I'm not asking for [a section 402 hearing]. I don't want one.... And if they put her on the stand, I'm not going to participate in terms of cross-examination because I don't want to give her practice." The court ruled that the prosecution's challenge to the admissibility of portions of Ramirez's potential testimony was "premature at this point in time," and then stated, "I think we're in a position of giving opening statements tomorrow. [¶] Is that your feeling counsel?"

---

[4]Evidence Code section 402, subdivision (b) provides, in relevant part: "The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury...." Further references to section 402 are to Evidence Code section 402.

Defense counsel responded, "Yeah, your Honor."

On the morning of the next day, Thursday, February 10, following an in limine discussion of evidentiary matters, the parties presented opening statements. Immediately thereafter, the prosecution presented its first witness, Angelina Ramirez. Toward the end of the morning session, in a discussion out of the presence of the jury, defense counsel stated, "I intend to lay a foundation ... that [Ramirez] called the police and used her knowledge to get my client in trouble and I want to bring up the incident with Mr. Montiel, but I'm perfectly happy to hold those in abeyance if this witness will be available after my client testifies." The court stated it would order that Ramirez "be available for the defense case, as well as rebuttal and/or surrebuttal." Thereafter, Ramirez resumed testifying. After redirect examination the court excused her and, at the request of both the prosecution and defense, made her subject to recall. The rest of the court day was taken up with testimony of another prosecution witness.

No court proceedings were held the following three days: Friday, February 11; Saturday, February 12; and Sunday, February 13.

On the morning of Monday, February 14, the court heard appellant's motion for the appointment of substitute counsel ( Marsden motion)[5] during which appellant complained, inter alia, that defense counsel failed to introduce evidence, or cross-examine Ramirez, concerning "the CPS reports and the police reports of Richard Montiel...." Counsel responded, "[W]hat Mr. Rodriguez is talking [about] partially goes to the heart of why I made a motion to continue-or for a mistrial.... [¶] Well, I don't have those witnesses and I don't have access to them and I made my record on that earlier. So I think he has a complaint, but it's a complaint I've already stated to the Court and the Court has ruled against me on that issue."

Later in the hearing, defense counsel reiterated, as he told the court on February 8, that he learned Richard Montiel's name upon reading the CPS reports provided him by the prosecutor on February 7, and as result of obtaining that information he was able to obtain a report containing information supporting the defense claim that Ramirez had fabricated her claims regarding appellant's conduct. Counsel then told the court that the primary reason he "didn't go into" these matters in his cross-examination of Ramirez was the following: "I don't have and have not been able to find-I did ask my investigators to do some looking Friday ... but nobody got back to me regarding Mr. Montiel or Miss Rosalinda Hernandez, who were the two witnesses listed in this report...." The court then asked counsel "who was supposed to get back to [him]?" at which point the following exchange occurred:

"MR. LUKEHART: I went to my chief investigator and said have you got somebody available, I would really like you to check this stuff out, I'm in the middle of a trial ... and he said he'd see if he could find somebody to go do so. [¶] ... Most of the investigators were actually out of the office all day [Friday], anyway, working on other cases, and I only managed to speak to my chief investigator ... [prior to 8:00 a.m.].... I haven't gotten anything back.

"THE COURT: Didn't hear from him this morning?

"MR. LUKEHART: No, I haven't gotten anything back from anybody. [¶] But in any case, the main reason I didn't go into it is that ... [I] don't have a real good handle on what the actual facts might be. [¶] I have a report ... but it has a lot of significant gaps.... [¶] And I didn't feel that I could competently cross-examine in that context. [¶] I recall raising this issue also in my earlier motion with the Court.... [¶] ... I do have a report.... It does in some sense corroborate what [appellant] told me.

"THE COURT: So [Ramirez] ... is still available should you wish to get into

---

[5]People v. Marsden (1970) 2 Cal.3d 118.

1    those matters.
         "MR. LUKEHART: Yes."
2    The court denied appellant's Marsden motion, trial resumed and both parties
     rested later that day.
3
(Id. at 4-9.)
4                                    **DISCUSSION**

5  **I.     Jurisdiction**

6        A person in custody pursuant to the judgment of a State court may petition a district court for

7  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

8  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

9  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

10 the United States Constitution.  Petitioner is currently incarcerated at Corcoran State Prison in Kings

11 County and his conviction arose from a judgment in the Kern County Superior Court.  As both Kings

12 and Kern County fall within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over

13 Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. § 2241(d) (vesting concurrent

14 jurisdiction over application for writ of habeas corpus to the district court where the petitioner is

15 currently in custody or the district court in which a State court convicted and sentenced Petitioner if

16 the State "contains two or more Federal judicial districts").

17 **II.    AEDPA Standard of Review**

18       On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

19 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

20 enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

21 (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

22 governed by its provisions.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition

23 "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

24 'contrary to, or involved an unreasonable application of, clearly established Federal law, as

25 determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

26 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*,

27 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

28 \\\

As Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

\\\

\\\

\\\

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

### III.   Review of Petitioner's Claims

The petition for writ of habeas corpus contains two grounds for relief. In his first ground for relief, Petitioner alleges that the trial court's denial of Petitioner's continuance motion resulted in a violation of his due process rights. Petitioner's second ground for relief contends that his trial counsel was constitutionally ineffective in violation of his Sixth Amendment right to counsel.

####   *A.   Ground One: Denial of Continuance*

Petitioner's first ground for relief contends that the trial court's denial of his continuance motion resulted in a violation of his due process rights.

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court reached the merits of Petitioner's continuance claim. As the California Supreme Court's decision was a summary denial, the Court looks through that decision to the last reasoned decision–namely, the decision by the California Court of Appeal. *See Nunnemaker*, 501 U.S. at 804.

The California Court of Appeal found that the trial court's denial of the February 8 motion was not arbitrary.[6] The appellate court noted the correct legal standard for evaluating a due process violation, reiterating the Supreme Court's statements in *Ungar* before observing that:

> [T]he court denied the motion without prejudice, indicating that more time could be granted if counsel "need[ed] it"; and the court further noted that defense counsel would have the court holiday on the upcoming Friday as well as the week-end in which to continue with his investigation and his efforts to have the potential police officer witnesses served with subpoenas, thus giving counsel several more days in which to attempt to accomplish these tasks. Under these circumstances, appellant has not met his burden of establishing that the court clearly abused its discretion in initially denying appellant's motion for a continuance.

(Resp't Answer Ex. A at 10-11.)

While a "continuance is traditionally within the discretion of the trial judge," certain denials of a continuance may constitute a due process violation. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The United States Supreme Court further noted in *Ungar* that:

> [I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; *Torres v. United States*, 270 F.2d 252 (C.A.9th Cir.); *cf. United States v. Arlen*, 252 F.2d 491 (C.A.2d Cir.).

---

[6]The appellate court found that the continuance motion on February 9 was never ruled upon and that Petitioner has failed to press the ruling, thereby precluding Petitioner from raising a claim regarding the February 9 motion on appeal. (Resp't Answer Ex. A at 11-12.)

*Id*. at 589-90.

In *Morris v. Slappy*, 461 U.S. 1 (1983), the Supreme Court reiterated its holding in *Ungar*, finding that, "[t]rial judges necessarily require a great deal of latitude in scheduling trials . . . Consequently, broad discretion must be granted trial courts on matters of continuances." *Id*. at 11-12. "The concept of fairness, implicit in the right to due process, may dictate that an accused be granted a continuance in order to prepare an adequate defense." *United States v. Bogard*, 846 F.2d 563, 566 (9th Cir. 1988), *superseded on other grounds as noted in Simpson v. Lear Astronics Corp*., 77 F.3d 1170, 1174 (9th Cir. 1996); *see also Houston v. Schomig*, 533 F.3d 1076, 1079-1080 (9th Cir. 2008). The Ninth Circuit has previously examined four factors, derived from its decision in *United States v. Flynt*, 756 F.2d 1352, 1359-61 (9th Cir. 1985), in assessing whether the trial court's denial of a continuance was so arbitrary as to violate due process. *See Armant v. Marquez*, 772 F.2d 552, 556-57 (9th Cir. 1985). The factors considered are: (1) the defendant's diligence prior to the request; (2) the likelihood that the continuance would have satisfied the defendant's needs; (3) the inconvenience a continuance would have caused to the court and the prosecution, including the timing of the request ; and (4) the prejudice to defendant as a result of the court's denial of the motion. *See United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir.2000). The most critical question in this four factor inquiry is whether petitioner was prejudiced by the trial court's denial of his continuance motion. *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995); *see also Armant*, 772 F.2d at 556-557 (9th Cir. 1985) (finding that at a minimum, petitioner must demonstrate prejudice stemming from the court's denial of a request for a continuance in order to establish a due process violation).

Here, the trial court articulated several reasons for denying the continuance request, namely the desire to impanel a jury, the upcoming holiday weekend permitted time for an initial investigation, and the possibility of a later continuance. The state appellate court deemed these reasons to be adequate and non-arbitrary. The Court does not find this conclusion to be an objectively unreasonable application of *Ungar* and *Morris* as the state court articulated several non-arbitrary reasons for its denial. Additionally, Petitioner has failed to demonstrate that he was prejudiced by the denial of a continuance. Assuming that the previous incident involving Mr.

Montiel was admissible, Petitioner has presented no evidence, such as an affidavit from Mr. Montiel or the officers involved, attesting to what evidence would have been uncovered if a continuance had been granted. Rather, Petitioner presents conclusory allegations regarding the type of evidence counsel could have uncovered if the trial court had granted a continuance. Such allegations are insufficient for this Court to conclude that Petitioner was prejudiced by the denial of additional time. Thus, Petitioner is not entitled to habeas corpus relief on this ground.

### B.      Ground Two: Ineffective Assistance of Counsel

In his second ground for relief, Petitioner alleges that his trial counsel was ineffective for failing to pursue a continuance motion. As previously noted, the trial court indicated that it would be inclined to grant additional time if needed. Petitioner's counsel raised the continuance motion as proceedings on February 9 but the trial court incorrectly believed that counsel was moving for a section 402 hearing. After informing the court that a hearing was not desired by the defense, counsel failed to renew the motion and the trial court never ruled on the subsequent motion.

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

As previously noted, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker*, 423 F.3d at 1091. Here, the Kern County Superior Court was the last state court to issue a reasoned decision in this case as the California Court of Appeal and the California Supreme Court summarily denied the petitions for writ of habeas corpus that Petitioner submitted. Thus, the Court looks through the decisions of the state appellate and high court to the decision by the Kern County Superior Court. *See Nunnemaker*, 501 U.S. at 804. In finding that Petitioner was not entitled to habeas corpus relief, the Superior Court acknowledged that counsel's failure to pursue a continuance motion had been found by the appellate court to be ineffective. However, the Superior Court found that Petitioner had failed to establish prejudice in light of the substantial evidence against Petitioner, including Petitioner's tape recorded confession that he attempted to suffocate the baby. (Resp't Answer Ex. C at 2.) The Court does not find this to be an objectively unreasonable application of *Strickland*. The Court agrees with the state appellate court that Petitioner has failed to show that trial counsel's deficient performance prejudiced the outcome of his trial. As previously stated, Petitioner has presented no evidence as to what additional evidence might have been admitted had a continuance been granted. The only evidence probative to the prejudice Petitioner has suffered are his own conclusory allegations, which are insufficient for habeas corpus relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). More importantly, the evidence against Petitioner was substantial and included Petitioner's tape recorded interrogation by the police. During the interrogation, Petitioner confessed that "[t]he baby was crying. And I snapped." (CT at 123.) Petitioner admitted to suffocating the child with a blanket despite knowing that it would eventually kill the baby. (Id. at 123-124.) In light of such evidence,

the Court does not find that there exists a reasonable probability that had trial counsel's successfully pursued a continuance, Petitioner's trial would have resulted in a more favorable verdict. Thus, the Court cannot conclude that counsel's deficiency prejudiced the outcome of Petitioner's trial and Petitioner is not entitled to habeas corpus relief on this ground.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 21, 2010            /s/ John M. Dixon            **
                                  UNITED STATES MAGISTRATE JUDGE